# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHEASTERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| WILLIE BURRELL, et al., | ) | |
|     Plaintiffs, | ) | |
| | ) | |
|     v. | ) | 03 C 8776 |
| | ) | |
| CHICAGO HOUSING AUTHORITY, | ) | |
|  et al., | ) | |
|     Defendants. | ) | |

## MEMORANDUM AND ORDER

Plaintiffs Willie Burrell ("Burrell"), the Dorothy Gautreaux Northeast Scattered Site Local Advisory Council ("Advisory Council"), and the Northeast Scattered Site Resident Management Corporation ("Management Corporation") contend that federal and local authorities have engaged in a longstanding pattern of discrimination in the provision and administration of public housing units in Chicago. Burrell filed a pro se complaint on behalf of all the plaintiffs alleging racial discrimination pursuant to the Federal Fair Housing Act, 42 U.S.C. § 3601, *et seq.*, and 42 U.S.C. § 1983. The court appointed counsel for Burrell and subsequently denied counsel's motion to withdraw. The defendants seek to dismiss Burrell's complaint, alleging that he lacks standing or his claims fail on the merits. For the following reasons, the motions to dismiss are granted.

## I.     Background

The following facts are deemed true for the purpose of the defendants' motion to dismiss. Burrell is African-American and a resident of the Chicago Housing Authority ("CHA") development known as the Dorothy Gautreaux Northeast Scattered Sites ("DGNESS"). Burrell is the President of the Advisory Council and the Management Corporation.

Since 1992, the Management Corporation has repeatedly requested office space from the CHA and United States Department of Housing and Urban Development ("HUD"). Likewise, since 1995, the Advisory Council has repeatedly asked the CHA and HUD for office space. However, the CHA and HUD have routinely denied these requests. The plaintiffs allege racial discrimination as the reason for the defendants' denial of office space. Moreover, the plaintiffs claim that defendants Housing Resource Center ("HRC"), Jane Adams Hull House Association ("HHA"), Alderman Shiller ("Shiller"), and Alexander Polikoff ("Polikoff") have directed or supported CHA and HUD's allegedly discriminatory denials.

On June 24, 1995, the Management Corporation held a meeting with HUD Assistant Secretary Joseph Shuldiner to request office space, a memorandum of understanding, and a dual management contract with CHA. Defendant Shiller allegedly stood in front of HUD Secretary Joseph Shuldiner for ten minutes to delay Shuldiner's arrival at the meeting. Moreover, Shiller has allegedly used her office to influence decisions related to the activities and management of the DGNESS.

Despite the delay, the Management Corporation negotiated a contract to manage the DGNESS. However, HRC and HHA maintenance persons allegedly told DGNESS residents that the Management Corporation intended to discriminate against Hispanic residents. HRC subsequently released a newsletter which, contrary to the Management Corporation's intentions, claimed that the Management Corporation planned to hire a company to manage the DGNESS.

Defendants CHA, HRC, and HHA have allegedly solicited, processed, and approved tenant applications based on race. In one particular incident, HHA, HRC and CHA allegedly discarded approximately 4600 tenancy applications filed primarily by African-Americans. The

defendants have failed to inform African-American residents of their rights to transfer to a Scattered Site unit, in opposition to the Gautreaux Tenant Assignment Plan Addendum approved on July 12, 1989. Since 1994, HRC and HHA have allegedly labored to prevent African-American residents from transferring into the DGNESS, leaving African-American residents in areas of high crime and poverty. Moreover, HRC has allegedly begun to withdraw maintenance services to public housing units in census tracks primarily occupied by African-American residents.

The plaintiffs' complaint asserts that the defendants have engaged in racial discrimination in violation of the Fair Housing Act and the Civil Rights Act, committed torts against the plaintiffs, and generally discriminated against African-American residents of public housing.

## II. Discussion

### A. Claims Brought by Plaintiffs Management Corporation and Advisory Council

Complaints brought by an organization or corporation must be signed by a person representing the parties. Fed. R. Civ. P.11(a). Although individuals may represent themselves pro se, corporations and organizations must be represented by a lawyer. *Navin v. Park Ridge Sch. Dist. 64,* 270 F.3d 1147, 1149 (7th Cir. 2001) (a non-lawyer cannot prosecute a suit on behalf of another); *Scandia Down Corp. v. Euroquilt, Inc.*, 772 F.2d 1423, 1427 (7th Cir. 1985) ("A 'corporation' is an abstraction, and abstractions cannot appear pro se").

Here, Burrell has signed the complaint on behalf of all three plaintiffs, two of whom are organizations. Burrell may pursue a claim on his own behalf, but he is not an attorney and thus may not pursue claims on behalf of the remaining plaintiffs. Therefore, the court must either

appoint council for plaintiffs Advisory Council and Management Corporation or dismiss their claims.

Civil litigants do not have a right, either constitutional or statutory, to counsel. *Zarnes v. Rhodes*, 64 F.3d 285, 288 (7th Cir. 1995). The court may nevertheless, in the exercise of its discretion, request counsel to represent indigents in appropriate cases. *Id*. A litigant who seeks appointment of counsel must first, as a threshold matter, make a reasonable attempt to secure private counsel. *Id*. If a litigant satisfies this burden, the court should consider the following nonexhaustive list of factors: "(1) the merits of the plaintiff's claims; (2) whether the plaintiff can investigate crucial facts; (3) whether trained counsel will better expose the truth; (4) the plaintiff's ability to present the case; and (5) the complexity of the relevant legal issues." *Id*. In essence, this inquiry boils down to the simple question, "given the difficulty of the case, [does] the plaintiff appear to be competent to try it himself and, if not, would the presence of counsel [make] a difference in the outcome?" *Id*.

As organizations without representation, plaintiffs Advisory Council and Management Corporation are incapable of trying this case. Nevertheless, the court believes that appointing counsel will not affect the disposition of the claims brought by the organizational plaintiffs. The Management Corporation asserts that it has a right to training, office space, and rental management opportunities, while the Advisory Council seeks the right to participate in meetings with the CHA and enter into an agreement with the CHA regarding relocation and other issues concerning the CHA Plan for Transformation, which is grounded in the CHA Relocation Rights Contract.

In support of its claims, the Management Corporation directs the court's attention to 24 C.F.R. § 964.15, which provides that:

> It is HUD's policy to encourage resident management. HUD encourages HAs, resident councils and resident management corporations to explore the various functions involved in management to identify appropriate opportunities for contracting with a resident management corporation. Potential benefits of resident-managed entities include improved quality of life, experiencing the dignity of meaningful work, enabling residents to choose where they want to live, and meaningful participation in the management of the housing development.

The Supreme Court, however, has held that a regulation only creates an enforceable right if its language unambiguously confers a specific, enforceable right upon its beneficiaries. *See Suter v. Artist M.*, 503 U.S. 347, 362-63 (1992). Section 964.15 expresses HUD's policy of encouraging resident management, but does not create a right for the Management Corporation to control any aspects of resident management. Any claim based on the policy statement in § 964.15 must, therefore, fail. *See Perry v. Housing Authority of the City of Charleston*, 664 F.2d 1210, 1217 (4th Cir.1981) (policy statements do not create legally cognizable rights to tenants of programs funded under the housing statutes).

With respect to the Advisory Council's claims, the CHA Relocation Rights Contract runs between the CHA and CHA leaseholders and only applies when leaseholders face relocation. The Advisory Council is obviously not a leaseholder who is facing relocation so it does not have standing to raise claims arising under the CHA Relocation Rights Contract.

In addition, the Advisory Council has offices at 4429 North Clifford. Burrell contends that the defendants were obligated to provide the Advisory Council with additional office space on the second floor of 4429 South Clifford. In support, Burrell directs the court's attention to a HUD policy that encourages but does not require housing authorities to provide office space to a

duly recognized resident council. *See* 24 C.F.R. 964.18 ("If requested, a Housing Authority should provide a duly recognized Resident Council office space and meeting facilities ...."). The Advisory Council is not a resident council, so even if the policy was mandatory, it would still be inapplicable.

Accordingly, regardless of whether the Management Corporation and the Advisory Council have counsel, therefore, they would either be unable to state a claim or lack standing. Accordingly, the court declines to appoint counsel for them and dismisses their claims with prejudice.

**B.    Claims Against HUD**

HUD contends that the court lacks jurisdiction over the claims against it under the Fair Housing Act and 28 U.S.C. §§ 1343, 1343, 1331, and 1367.

**1.    The Fair Housing Act and Title VI**

In August of 2001, Burrell submitted an administrative Fair Housing Act complaint to HUD's office of Fair Housing and Equal Opportunity in Chicago. In his complaint, Burrell raised a number of alleged Fair Housing Act violations, including tenanting violations (*e.g.*, claims based on the assignment of tenants to particular CHA units). HUD conducted a compliance review and ruled against Burrell. It then advised Burrell that if he was dissatisfied, he could seek relief by seeking to intervene in *Gautreaux v. Chicago Housing Authority*, No. 66 C 1459 (N.D. Ill.), a class action case pending before Judge Aspen and concerning racial discrimination in the location and tenanting of public housing that resulted in segregated public housing in Chicago.

HUD contends that the Fair Housing Act does not provide a basis for an express or implied private right of action against HUD. All of the defendants contend that to the extent that Burrell is attempting to raise a tenanting claim, he must do so by pursing relief in the *Gautreaux* case. Burrell concedes that the Fair Housing Act does not allow for a private right of action against HUD and notes that he is not pursuing such a claim. He then contends that a private right of action exists which allows him to sue HUD for violations of Title VI of the Civil Rights Act.

Section 601 of Title VI provides that no person shall, "on the ground of race, color, or national origin, be excluded from participation in, be denied that benefits of, or be subjected to discrimination." 42 U.S.C. § 2000(d), *et seq*. Private individuals who assert that they were victims of intentional discrimination may sue under Title VI for injunctive relief and damages. *Alexander v. Sandoval*, 532 U.S. 275, 279-80 (2001). Claims of negligent discrimination, however, are not actionable under Title VI. *See id.*; *see also Alexander v. Choate*, 469 U.S. 287, 293 (1985) ("Title VI itself directly reach[es] only instances of intentional discrimination").

Here, Burrell appears to be alleging that HUD discriminated against him by failing to enforce federal anti-discrimination laws when it knew, or should have known, about CHA's alleged racial discrimination. Burrell's fourteen-page, single-spaced complaint, however, does not specifically contend that HUD engaged in intentional, as opposed to negligent, discrimination. Accordingly, the Title VI claims are dismissed without prejudice.

To the extent that Burrell is attempting to raise a tenanting claim, the court notes that it agrees with the defendants that any such claim would be properly raised in the *Gautreaux* case, as the *Gautreaux* court approved a tenanting assignment plan and has been overseeing it for many years. In other words, any claim that the *Gautreaux* court's orders have been violated is

not properly before this court.  Moreover, since *Gautreaux* is a class action, Burrell can either bring his issues to the attention of the counsel in the *Gautreaux* case or seek to intervene.  Pursuing relief in the *Gautreaux* case would serve the interests of justice as well as judicial economy.  Thus, to the extent that Burrell is attempting to raise a tenanting claim, it is dismissed without prejudice.

### 2. § 1343

Burrell also asserts that jurisdiction as to HUD is proper under 28 U.S.C. § 1343(a)(3).  That section provides that district courts shall have original jurisdiction over civil actions "[t]o redress the deprivation, under color of any State law, status, ordinance, regulation, custom or usage, of any right, privilege, or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States."

In its motion to dismiss, HUD asserts that Burrell's complaint fails to allege that HUD acted under color of state law.  In his response, Burrell asserts that HUD engaged in state action because it acted "with and through the state and local public housing authorities to unfairly deprive [him] of his guaranteed right to non-discriminatory, equal housing."  Response at 8.  The court agrees with HUD that this allegation does not amount to a claim that HUD acted under color of a specific state law.  *See Flagg Bros. v. Brooks*, 436 U.S. 149, 155-57 (1978) ("under color of state law" element requires the plaintiff to show that the defendant deprived him of a right while acting pursuant to a state statute); *see also Resident Council of Allen Parkway Village v. U.S. Dept. of Housing*, 980 F.2d 1043. 1050 (5th Cir. 1993).  Thus, Burrell's claim for relief under § 1343 is dismissed without prejudice.

### 3. § 1367 – Moving to Work

Burrell also asks the court to exercise supplemental jurisdiction under 28 U.S.C. § 1367 over any claims which are resolved using state law. Although his complaint does not specifically raise any state law claims, some of the defendants argue that Burrell's claims regarding an alleged breach of the Moving to Work agreement ("MWA") arise under state law. First and foremost, Burrell has not, as of this moment, successfully established that the court can exercise original jurisdiction over any of his claims. In any event, Burrell lacks standing to raise any such claims.

Specifically, Burrell claims that the defendants violated the MWA by failing to follow an agreement between HUD and CHA requiring the CHA to negotiate in good faith with the Central Advisory Council of CHA tenants to protect the rights of transferred tenants. *See Wallace v. Chicago Housing Authority*, 298 F.Supp.2d 710, 715 (N.D. Ill. 2003). Because Burrell has not alleged that he is a member of the Central Advisory Council, that he has been transferred by the CHA, or alleged that the alleged breach injured him, he cannot bring a claim under the MWA, so the MWA claims are dismissed without prejudice.

### 4. Tort Claims Against HUD

Burrell's complaint repeatedly states that HUD engaged in intentional and malicious conduct. Burrell's counsel concedes that this is a housing discrimination case, and that Burrell – whose pro se complaint is before the court – is not trying to plead tort claims against HUD. The court will thus not address HUD's arguments regarding the preemptive effect of the Federal Tort Claims Act. Insofar as Burrell seeks to state claims sounding in tort against HUD, these claims are thus dismissed with prejudice.

### C. Claims Against the CHA & Hull House Defendants

Defendants CHA, Terry Peterson (the CHA's chief operating officer), Jane Adams Hull House Association, Clarence Wood (the executive director for the Jane Adams Hull House Association ), and Alexander Polikoff (a supervisor with the Business and Professional People for the Public Interest and counsel in the *Gautreaux* litigation) have filed a motion to dismiss under Rules 12(b)(1) and 12(b)(6) contending, among other things, that: (1) Burrell's complaint fails to satisfy Rule 8 and fails to plead any dates for the alleged wrongful conduct; (2) Burrell lacks standing to raise many of the claims asserted in his complaint; and (3) the remaining wrongs alleged in Burrell's complaint fail to state a claim for which relief may be granted.

#### 1. Rule 8

The CHA/Hull House defendants contend that Burrell's complaint is incomprehensible and that the omission of key dates creates substantial doubt as to Burrell's ability to avoid a statute of limitations problem. The court agrees that Burrell's complaint is not a model of clarity. Nevertheless, it is organized into numbered paragraphs and the court was able to understand the gist of Burrell's contentions. Moreover, Burrell drafted the complaint pro se, despite the fact that he is currently represented by counsel, and thus must be "held to less stringent standards than those applied to complaints drafted by attorneys." *Swofford v. Mandrell*, 969 F.2d 547, 549 (7th Cir. 1992). The court thus declines to strike the complaint under Rule 8.

With respect to the lack of dates in the complaint, the statute of limitations is an affirmative defense, *see* Fed. R. Civ. P. 8(c), and "[c]omplaints need not anticipate or attempt to defuse potential defenses." *U.S. Gypsum Co. v. Indiana Gas Co.*, 350 F.3d 623, 626 (7th Cir. 2003) (a "complaint states a claim on which relief may be granted when it narrates an intelligible

grievance that, if proved, shows a legal entitlement to relief" and thus need not attempt to preempt potential affirmative defenses). Dismissal may be appropriate, however, where "the existence of a valid affirmative defense is so obvious from the face of the complaint that the suit can be regarded as frivolous." *Walker v. Thompson*, 288 F.3d 1005, 1010 (7th Cir. 2002).

Here, the CHA/Hull House defendants contend that there is "substantial doubt" that Burrell's claims are timely, but devote two sentences to their statute of limitations argument. They also never definitively state that they believe that Burrell's claims are time-barred. Because Burrell is not required to plead dates in his complaint and at this stage in the proceedings, the court cannot definitively find that the statute of limitation bars Burrell's claims, the court declines to accept the CHA/Hull House defendants' invitation to dismiss the complaint based on either Rule 8 or the statute of limitations.

## 2. Standing

Under Article III of the Constitution, the court may only hear cases involving present cases and controversies. *See, e.g., Valley Forge Christian College v. Americans United for Separation of Church and State*, 454 U.S. 464, 471 (1982). The party invoking federal jurisdiction has the burden of establishing standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). Burrell asserts that he has standing to raise claims that the CHA/Hull House defendants: (1) discriminated against African-Americans in public housing with respect to the assignment of tenants in scattered site public housing; (2) engaged in discriminatory maintenance practices; (3) breached the Moving to Work Agreement (the court will not discuss this claim further as it has already found that Burrell lacks standing to raise this claim); and (4) caused him to suffer emotional distress.

### a. Housing Discrimination Against African-Americans

Burrell first alleges that he has standing because the CHA/Hull House defendants discriminated against African-Americans in public housing with respect to the assignment of tenants in scattered site public housing. In support, he points to the allegations in his complaint asserting that African-American CHA tenants have been the victims of various kinds of housing discrimination. This misses the point; the question is whether Burrell himself has personally suffered an injury, not whether he belongs to a class of people which includes other individuals who have allegedly been the victims of discrimination. *See, e.g., Gladstone Realtors v. Village of Bellwood,* 441 U.S. 91, 99 (1979).

Burrell also directs the court's attention to his allegations that the "[CHA/Hull House defendants] have implemented and/or maintained policies and practices which have had a disparate impact on [him]." Complaint at ¶ 38. Even under liberal notice pleading standards, however, the allegations relating to unspecified policies and practices do not put the defendants or the court on notice of the general basis of Burrell's claims. The court stresses that it is not imposing a fact-pleading requirement on Burrell; it is simply requiring Burrell to provide the minimal level of detail necessary for the court and the defendants to understand the general contours of his claim.

In addition, Burrell contends that he has standing because the CHA/Hull House defendants' assignment of African-Americans to certain housing is "systemic, pervasive and institutional and has had lasting damaging effect on [him]." Complaint at ¶ 55. Burrell claims that this discriminatory practice has caused him to suffer emotional distress. This claim is at odds with the Supreme Court precedent requiring a plaintiff to suffer a direct injury above and

beyond his distress at seeing others allegedly fall victim to discrimination. *See Valley Forge*, 454 U.S. at 485-86. Accordingly, Burrell lacks standing to raise claims based on the discriminatory housing practices allegedly targeted at African-American CHA tenants.

b. **Discriminatory Failure to Maintain**

Burrell next claims that he has standing to bring claims based on the CHA/Hull House defendants' alleged failure to maintain public housing properly. In support, he points to allegations in his complaint to the effect that some African-American residents in some areas experienced withdrawal of maintenance services. As noted above, Burrell has standing only if he personally suffered an injury, so the allegation that other African-American CHA tenants suffered an injury is not enough to create standing for Burrell. *See, e.g., Gladstone Realtors v. Village of Bellwood,* 441 U.S. at 99.

Burrell also asks the court to presume that his general allegations "embrace those specific facts that are necessary to support [his] claim." *Lujan*, 504 U.S. at 561. Essentially, Burrell would like the court to construe his allegations of injury to African-American residents of public housing as allegations of personal injury to him. Even using the generous standards applicable to motions to dismiss, the court cannot create allegations of a direct injury to Burrell when his complaint does not contain any facts which would support such an inference.

c. **Burrell's Distress and Emotional Injury**

Burrell next attempts to predicate standing based on emotional injury. Specifically, he alleges that the CHA/Hull House defendants' actions caused him to suffer acute anxiety, embarrassment, humiliation, loss of self esteem and sense of dignity, as well as emotional and mental distress. (Compl. ¶¶ 126, 128.) "Psychological injury based on the observation of

conduct with which one disagrees is insufficient" to create standing. *Doe*, 41 F.3d at 1159; *Valley Forge*, 454 U.S. at 485-86 ("the psychological consequence presumably produced by observation of conduct with which one disagrees" is "not an injury sufficient to confer standing under Art. III, even though the disagreement is phrased in constitutional terms"). Burrell's alleged psychological injuries are thus not enough to create standing.

### 3. Burrell's Remaining Claims Against the CHA/Hull House Defendants

Burrell asserts that the CHA and/or the Hull House defendants violated the Relocation Rights Contract and the Quality Housing and Work Responsibility Act. He also asserts claims against Terry Peterson and Clarence Wood (officers of the CHA and Hull House, respectively) in their official capacities.

#### a. Standard

In ruling on a motion to dismiss pursuant to Rule 12(b)(6), the court must assume the truth of all facts alleged in the complaint, construing the allegations liberally and viewing them in the light most favorable to the plaintiff. *See, e.g., McMath v. City of Gary*, 976 F.2d 1026, 1031 (7th Cir. 1992). Dismissal is properly granted only if it is clear that no set of facts which the plaintiff could prove consistent with the pleadings would entitle the plaintiff to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). However, the court is neither bound by the plaintiff's legal characterization of the facts, nor required to ignore facts set forth in the complaint that undermine the plaintiff's claims. *Scott v. O'Grady*, 975 F.2d 366, 368 (7th Cir. 1992).

### b. The Relocation Rights Contract

As noted above, Burrell contends that the CHA defendants violated the Relocation Rights Contract. This contract runs between the CHA and all CHA tenants, and applies only when CHA leaseholders face relocation by CHA. *Wallace v. Chicago Housing Authority*, 298 F. Supp. 2d 710, 715 (N.D. Ill. 2003) ("This contract establishes the temporary and permanent housing relocation choices for CHA tenants whose buildings were slated for demolition"). Burrell is the only plaintiff who holds a CHA lease, and he does not allege that the CHA is attempting to relocate him. Thus, Burrell cannot state a claim under the Relocation Right Contract.

### c. The Quality Housing and Work Responsibility Act

Burrell also cites to the Quality Housing and Work Responsibility Act ("QHWRA"), 42 U.S.C. § 1437c-1, in his complaint. The CHA defendants correctly note that Burrell's complaint and response to the motion to dismiss do not identify any specific sections of this act which the defendants allegedly violated. Moreover, even when reading Burrell's complaint generously, the court has been unable to ascertain what portions of QHWRA are at issue. Accordingly, Burrell's claims under QHWRA are dismissed.

### d. Claims Against Peterson and Wood

The CHA/Hull House defendants contend that the claims against Peterson and Wood should be dismissed since the CHA and Hull House are already named as defendants. Specifically, the CHA/Hull House defendants argue that claims against a public official in his official capacity are simply suits against the public entity itself. *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) ("It is not a suit against the official personally, for the real party in interest is the entity");

However, it is appropriate to name both an agency and its officers if equitable relief is sought from the organization, because such relief is necessarily directed and carried out by the officers in their official capacity. *Whiting v. Marathon County Sheriff's Dept., et al.,* 382 F.3d 700, 701 (7th Cir. 2004); *Feir v. Ward*, 886 F.2d 848, 858 (7th Cir. 1989). Burrell requests various kinds of equitable relief, but the court has dismissed all of these claims either with or without prejudice. Accordingly, the claims against Peterson and Wood are dismissed without prejudice. If Burrell elects to amend his complaint in an effort to cure the deficiencies regarding his claims for equitable relief, he may also replead the claims against Peterson and Wood.

### C. Claims Against Alderman Shiller

First, Burrell alleges that during a 1995 meeting, Shiller allegedly prevented HUD Secretary Joseph Shuldiner from attending a meeting with DGNESS. Even assuming that Shiller's alleged attempt to delay Shuldiner's arrival to a meeting states a colorable cause of action, this claim is clearly time-barred. Specifically, the statute of limitations in Illinois for both § 1983 civil rights claims and claims arising under the Fair Housing Act is two years. *See, e.g., Clark v. City of Braidwood*, 318 F.3d 764, 766 (7th Cir. 2003) (§ 1983); 42 U.S.C. 3613(a)(1)(A) (Fair Housing Act); *Village of Belwood v. Dwivedi*, 895 F.2d 1521, 1527 (7th Cir. 1990) (same). Accordingly, Burrell's blocking the doorway claim is dismissed with prejudice.

Second, Burrell asserts that Shiller violated § 1983 by improperly using her position as an alderman to influence decisions related to the management and leasing of the DGNESS. In support, he points to his allegations that Shiller: (1) used her position as an alderman to unfairly exercise veto power over HUD and CHA's decisions regarding rentals of certain Chicago public housing units to prevent Burrell from receiving contracts to manage these units; (2) was

motivated to frustrate Burrell's efforts to obtain the right to manage CHA property because Burrell is African-American; and (3) has engaged in a pattern of intentional discrimination against Burrell since 1995.

Section 1983, on its face, only allows plaintiffs to pursue claims based on the alleged deprivation of constitutional rights. Although the court has carefully studied Burrell's complaint, it cannot ascertain what, if any, constitutional claims Burrell is attempting to state as to Shiller. The remaining claims against Shiller are, therefore, dismissed without prejudice.

### III. Conclusion

For the reasons stated above, the motions to dismiss filed by HUD [38-1], the CHA/Hull House defendants [33-1] and Shiller [36-1] are granted. Burrell is granted leave to file an amended complaint by September 23, 2005, consistent with this order and counsel's Rule 11 obligations.

If Burrell's counsel do not feel that they can file an amended complaint, they should file a motion to withdraw by September 23, 2005. (The court does not wish to imply that it believes that such a motion would be appropriate. Instead, it is merely trying to cover all of the potential scenarios that Burrell's counsel may face). In addition, the court sincerely thanks Burrell's appointed counsel and expresses its appreciation for the high level of representation provided by the attorneys who have worked on this action.

DATE: August 22, 2005

_Blanche M. Manning_
Blanche M. Manning
United States District Judge